# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

————————

No. 18-20022

————————

United States Court of Appeals
Fifth Circuit

**FILED**
March 26, 2019

Lyle W. Cayce
Clerk

United States Courts
Southern District of Texas
FILED

*May 08, 2019*

David J. Bradley, Clerk of Court

MEGAN WINFREY,

      Plaintiff - Appellant

v.

LENARD JOHNSON, Former San Jacinto County Sheriff's Deputy Chief,

      Defendant - Appellee

————————

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:14-CV-448

————————

Before JONES, HAYNES, and OLDHAM, Circuit Judges.

EDITH H. JONES, Circuit Judge:*

After her murder conviction was overturned, Megan Winfrey sought damages under § 1983 and has appealed the district court's grant of partial summary judgment dismissing her Fourth and Fourteenth Amendment claims. Because a panel of this court has already addressed the same issues in her brother's case, this panel is bound by precedent to reverse and remand on Winfrey's Fourth Amendment claim. The district court's dismissal of

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 18-20022

Winfrey's Fourteenth Amendment claims was proper, however, and this court declines to address as untimely her arguments concerning her expert witness. Accordingly, the district court's partial summary judgment order is REVERSED in part and AFFIRMED in part, and the case is REMANDED.

## I. BACKGROUND

Megan Winfrey ("Megan") was convicted of capital murder but her conviction was overturned on appeal after six years imprisonment. *Winfrey v. Texas*, 393 S.W.3d 763, 774 (Tex. Crim. App. 2013) ("*Winfrey I*"). Lenard Johnson, the Appellant, is a former deputy at the San Jacinto County Sheriff's Office who drafted and signed the arrest warrants for Megan, her father Richard Winfrey, Sr. ("Senior"), and her brother Richard Winfrey, Jr. ("Junior"). He also took witness testimony from David Campbell, a jailhouse informant who implicated the Winfreys in the murder of school janitor Murray Wayne Burr. The facts underlying this appeal need not be repeated as they have been set forth in Junior's case. *See Winfrey v. Rogers*, 901 F.3d 483, 488–90 (5th Cir. 2018) ("*Winfrey II*").

This appeal arises from the district court's opinion disposing of both siblings' cases. Megan's Fourth Amendment claim is nearly identical to that brought by Junior, with a few factual distinctions. First, while Junior was tried and acquitted after sitting in jail for two years, Megan was convicted by a jury and exonerated by the Texas Court of Criminal Appeals. Second, pertinent to her arrest warrant, deputies collected additional statements about Megan from teachers, including a statement by a teacher that Megan walked up to Burr in the school hallway, put her arm in his, and asked him when he was going to spend some money on her and take her out; a statement that after

2

No. 18-20022

a fight with him Megan said she wished someone should "beat the shit" out of Burr; and another teacher's statement that Megan had "assaulted her in some way" and threatened her.   Johnson contends these statements add support to his urging of probable cause to arrest her.   Third, the arrest warrant mistakenly indicated that the bloodhound drop-trail scent used Junior's scent, when it in fact used the scent of Winfrey's boyfriend Chris Hammond.   But there was no such error as to the dogs' alert on Megan's scent.

Winfrey was arrested on or about March 15, 2007 and detained pending trial.   She was reindicted for capital murder and conspiracy to commit murder on December 13, 2007, tried in October 2008, convicted on October 9, 2008, and sentenced to life imprisonment.   On February 27, 2013, the Texas Court of Criminal Appeals found the evidence legally insufficient to support Winfrey's conviction and rendered a judgment of acquittal for each offense.   *Winfrey I*, 393 S.W.3d at 774.

Winfrey filed a § 1983 lawsuit, originally alleging that Johnson, Rogers, San Jacinto County's then-Sheriff Clark, and Pikett violated her constitutional rights by using fabricated evidence in connection with the investigation, arrest and prosecution.   She also pursued state law malicious prosecution claims against Johnson, Rogers, and Pikett.   After a collection of dismissals, substitutions, settlements, and summary judgments, including dismissals under the Texas Tort Claims Act ("TTCA") or due to immunity, only Johnson remains as a defendant, and the district court granted summary judgment for Johnson on all claims.   At a hearing about expert reports, the district court also *sua sponte* decided against allowing one of Winfrey's experts, Dr. Marshall, from testifying.

3

No. 18-20022

Winfrey presents four arguments on appeal.   First, she argues that her Fourth Amendment claim that Johnson knowingly or recklessly made false statements in his arrest-warrant affidavit should go to trial.   Second, she asserts a Fourteenth Amendment claim of malicious prosecution under procedural due process.   Third, she presents a due process claim that Johnson fabricated Campbell's trial testimony, violating her right to a fair trial. Fourth, Winfrey argues that the district court abused its discretion in excluding her damages expert from testifying at trial.

## II.  STANDARD OF REVIEW

This court reviews the district court's grant of summary judgment *de novo*.   *Brewer v. Hayne*, 860 F.3d 819, 822 (5th Cir. 2017).   Summary judgment is appropriate when the movant is entitled to judgment as a matter of law and there is no genuine dispute of material fact.   *Id.*   "To survive summary judgment, the non-movant must supply evidence 'such that a reasonable jury could return a verdict for the nonmoving party.'"   *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505 (1986)).   The court must draw all reasonable inferences in the non-movant's favor and view the evidence in the light most favorable to the non-movant.   *Id.*

"A qualified immunity defense alters the usual summary judgment burden of proof . . . Once an official pleads the defense, the burden then shifts to the plaintiff, who must rebut the defense by establishing a genuine fact issue as to whether the official's allegedly wrongful conduct violated clearly established law.   The plaintiff bears the burden of negating qualified immunity, but all inferences are drawn in his favor."   *Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010) (quoting *Michalik v. Hermann*, 422 F.3d 252,

4

No. 18-20022

262 (5th Cir.2005)).   Finally, this court reviews the district court's probable-cause determination *de novo.*   *United States v. Lopez-Moreno,* 420 F.3d 420, 430 (5th Cir. 2005).

## III.  DISCUSSION

### 1. Fourth Amendment

Megan argues that Johnson's conduct violated her Fourth Amendment right to be free from arrest without a good-faith showing of probable cause and his duty not to knowingly, intentionally, or recklessly make false statements in an arrest warrant affidavit.   The substance of her claims is that Johnson's arrest-warrant affidavit contained material misstatements and, even if corrected, lacked probable cause.   Megan relies on this court's decision in *Winfrey II.*[1]   Johnson contends that he is entitled to qualified immunity, Megan never actually pled a Fourth Amendment violation arising from the arrest warrant, the statute of limitations has run on Megan's claim, and independent intermediaries blocked any causal chain running from the arrest warrant to Megan's incarceration.[2]

---

[1] Because of the timing of their briefs, the parties cite *Winfrey v. Rogers,* 882 F.3d 187 (5th Cir. 2018), but that decision was withdrawn and superseded on denial of rehearing by *Winfrey v. Rogers,* 901 F.3d 483 (5th Cir. 2018).   The opinions are identical in substance and outcome except for the analysis of qualified immunity.

[2] Megan's lawsuit is timely.   Since the *Winfrey II* panel concluded that Megan's § 1983 claim more closely resembles the tort of malicious prosecution, focused as it is on the wrongful institution of legal process, *see Winfrey II,* 901 F.3d at 492–93, the statute of limitations on that claim did not begin to run until "the prosecution ends in the plaintiff's favor."   *Castellano v. Fragozo,* 352 F.3d 939 (5th Cir. 2003) (en banc).   In Megan's case, that would be February 27, 2013, the date her conviction was overturned.

5

No. 18-20022

In *Winfrey II*, the panel analyzed the affidavits for Megan and Senior in making its legal determinations. *Winfrey II*, 901 F.3d at 489 n.1. It held that the affidavits contained material misrepresentations and omissions,[3] and that a "corrected" affidavit would not have satisfied the probable-cause requirement. *Id.* at 496. Thus, the panel vacated the district court's judgment and remanded for trial "on the factual issue of whether Johnson acted recklessly, knowingly, or intentionally by omitting and misrepresenting material facts in his affidavit when seeking an arrest warrant for Junior." *Id.* at 488. Because the panel in *Winfrey II* rejected most of the same objections Johnson now raises, Johnson is precluded from relitigating these issues. Johnson offers only two new reasons why this panel is not bound by a panel decision interpreting the sufficiency of the same warrant, but those, too, are unavailing.

First, Johnson contends that additional facts here support probable cause as to Megan. He argues that the mistaken drop-trail scent – which identified the scent as Junior's when it was in fact that of Megan's boyfriend – was not a mistake as to Megan. But the irrelevance of this misstatement does not add probable cause against Megan. Additionally, he argues that the warrant affidavit included statements from teachers about Megan, her

---

[3] The court found that "Junior provides evidence that Johnson made false statements in his affidavit by (1) omitting Campbell's statements that were contradicted by the physical evidence; (2) misstating that Pikett's drop-trail from Burr's house to the Winfrey house used Junior's scent, when the drop-trail actually used Hammond's scent; and (3) omitting Campbell's inconsistencies between his statements, that is, between Campbell's first statement—which was related in the affidavit—that said that Megan and Junior helped Senior to murder Burr and Campbell s inconsistent later statement that Senior's cousin was the accomplice." *Winfrey II*, 901 F.3d at 494.

6

No. 18-20022

relationship with Burr, and a possible propensity for violence.  But, as the district court noted, these statements, eyebrow-raising though they might be, do not link Megan to murder.  When weighed against the misstatements detailed in fn. 2 above, these factual distinctions do not detract from the *Winfrey II* panel's conclusion that "a reasonable magistrate would not have issued a warrant on the basis of this corrected affidavit, because the addition of the omitted material facts would have dissuaded the judge from issuing the warrant."  *Id.* at 496.

Second, Johnson contends that the independent intermediary doctrine applies here because, unlike in *Winfrey II*, and indeed noted by that panel, there was an additional proceeding before a state judge which Johnson argues acted as an independent intermediary.  Under the independent-intermediary doctrine, "'if facts supporting an arrest are placed before an independent intermediary such as a magistrate or grand jury, the intermediary's decision breaks the chain of causation' for the Fourth Amendment violation." *Jennings v. Patton*, 644 F.3d 297, 300–01 (5th Cir. 2011) (quoting *Cuadra v. Hous. Indep. Sch. Dist.*, 626 F.3d 808, 813 (5th Cir. 2010)).  But this doctrine only applies "where all the facts are presented to the grand jury, or other independent intermediary where the malicious motive of the law enforcement officials does not lead them to withhold any relevant information from the independent intermediary."  *Cuadra*, 626 F.3d at 813.  The panel in *Winfrey II* rejected Johnson's independent-intermediary argument as to the grand jury because it was "unclear" whether Johnson presented all the facts to the grand jury.  *Winfrey II*, 901 F.3d at 497.

7

No. 18-20022

Johnson attempts to distinguish *Winfrey II* because here, unlike there, a state judge *also* determined there was probable cause to arrest Megan. That is a fair point because the *Winfrey II* panel itself recognized the distinction and distinguished Junior's case – where "[n]one of these hearings addressed . . . whether there was probable cause to arrest Junior" – from Megan's case, where there was at least one hearing where the judge "determined that there was probable cause to arrest Megan." *Id.* But the exception to the independent-intermediary doctrine applies with equal force because, under *Winfrey II*, it is Johnson's burden to prove the omitted material information was presented to the judge. He has not done so. And again, since the panel in *Winfrey II* analyzed the very same affidavit, this court is bound by its rejection of the independent-intermediary doctrine. After *Winfrey II*, we have no leeway to conclude otherwise.

The only remaining question is the extent of Megan's potential damages. Based on *Winfrey II*, the misstatements in Johnson's arrest-warrant affidavit meant it lacked probable cause. The Supreme Court has made clear that pretrial seizures, even if they follow legal process, can violate the Fourth Amendment if the initial seizure occurred without probable cause and nothing later remedied the lack of probable cause. *See Manuel v. City of Joliet*, 137 S. Ct. at 918–19 ("If the complaint is that a form of legal process resulted in pretrial detention unsupported by probable cause, then the right allegedly infringed lies in the Fourth Amendment."). That is the case here – the material misstatements and omissions in the arrest-warrant affidavit led to Winfrey's unlawful arrest and pretrial detainment.

No. 18-20022

But that is not the end of this story, because Megan was reindicted and tried on evidence obtained after further investigation of her case.   Megan does not contradict the record evidence that Deputy Johnson's involvement in her investigation ceased following the issuance of the arrest warrant in February 2007, at which point the investigation was taken over by the Texas Rangers and the District Attorney's investigator, James Kirk.   The further investigation included follow-up interviews with Campbell and other witnesses.   At trial, new and potentially incriminating testimony about an alibi attempt and evidence tampering were offered by her ex-husband Hammond and her boyfriend at the time of the killing, Jason King.   *See Winfrey I*, 393 S.W.3d at 766.   Consequently, at the time of reindictment, the initial lack of probable cause ceased being the cause of Winfrey's detention and damages ceased accruing from Johnson's Fourth Amendment violation.

Additionally, although the Texas Court of Criminal Appeals ultimately reversed Winfrey's conviction, that court's painstaking review of the totality of the circumstantial evidence underlying her conviction undermines Megan's argument that the initial lack of probable cause supporting her arrest persisted through reindictment, trial, and incarceration, and continued to taint the case against her.   In concluding that the evidence was insufficient to prove Megan's guilt beyond a reasonable doubt, the court nowhere suggested that there was no probable cause to indict or try her for murder.   In fact, the majority found that the evidence did indeed raise a suspicion of her guilt.   The court's analysis further supports the conclusion that the initial lack of probable cause ceased with Megan's reindictment and so did the damages.

9

No. 18-20022

## 2. Fourteenth Amendment

In addition to her Fourth Amendment claims, Megan presses two claims under the Fourteenth Amendment: a malicious prosecution claim and a claim resulting from the Johnson's alleged use of fabricated evidence at trial. The malicious prosecution argument fails because Megan has failed to show that Johnson violated clearly established law. The fabrication of evidence argument fails because no reasonable jury could conclude on the facts before us that Johnson fabricated evidence.

### a. Malicious Prosecution

Megan argues that because her liberty was constrained beyond her initial arrest, and because Texas law provides an insufficient state tort law remedy, she may press a § 1983 federal malicious prosecution claim under procedural due process. She acknowledges, however, that the Supreme Court did not approve a substantive due process claim arising from malicious prosecution, *Albright v. Oliver*, 510 U.S. 266, 114 S. Ct. 807 (1994), and no subsequent decision of that Court or this court has rendered such a claim cognizable, much less "clearly established." *See, e.g., Castellano v. Fragozo*, 352 F.3d 939 (5th Cir. 2003) (en banc). Even if this court accepted Megan's invitation to break new legal ground, which we do not, Johnson would be entitled to qualified immunity. The district court's dismissal of the malicious prosecution claim was correct.

### b. Fabrication of Evidence

Megan's second Fourteenth Amendment claim concerns Johnson's interaction with jailhouse informant David Campbell. Megan contends that a reasonable jury could decide Johnson fabricated Campbell's testimony

10

No. 18-20022

because Campbell's pre-arrest interviews yielded conflicting facts at odds with the forensic evidence; Campbell himself believed that Johnson was trying to "stage" something against Megan; and Campbell testified to his suspicions at trial.   These facts do not support a claim of fabricated evidence.

All of the Supreme Court and other cases on which Megan relies deal with manufactured evidence or perjured witnesses.   In *Mooney*, for example, the court found a due process violation where there was a "deliberate deception of court and jury by the presentation of testimony known to be perjured" by *prosecutors*.   *Mooney v. Holohan*, 294 U.S. 103, 112, 55 S. Ct. 340, 342 (1935); *see also Pyle v. Kansas*, 317 U.S. 213, 63 S. Ct. 177 (1942).   *Brown v. Mississippi*, 297 U.S. 278, 286, 56 S. Ct. 461, 465 (1936) involved the coercion of confessions by use of physical violence.   *Napue v. People of State of Ill.*, 360 U.S. 264, 270, 79 S. Ct. 1173, 1177 (1959) involved the use of false testimony by a witness to curry favor with a prosecutor who might provide favors to the witness.   In *Miller v. Pate*, 386 U.S. 1, 6, 87 S. Ct. 785, 788 (1967), "[t]he prosecution deliberately misrepresented the truth" by "consistent and repeated misrepresentation" that shorts stained with paint were actually stained with blood.   The lone precedential Fifth Circuit case Megan cites, *Boyd v. Driver*, 579 F.3d 515 (5th Cir. 2009) (per curiam), involved the claim that prison employees gave perjured testimony at a criminal trial and destroyed and tampered with video evidence.   These cases all involve a motivated person who undertook to create or destroy evidence presented at trial in support of convictions.

The facts of this case are quite different.   Johnson took statements from Campbell on two occasions before he swore out the warrant affidavit.   Megan

11

No. 18-20022

has no basis for asserting that Johnson had any involvement in Campbell's testimony at trial; his connection to the case terminated with her arrest and Johnson did not even testify at her trial. The prosecutors alone were responsible for Campbell's trial testimony. Moreover, Campbell testified according to his own free will, never admitted any falsehoods in his trial testimony, and indeed truthfully related his own misgivings about any improper influence Johnson may have been asserting. Thus, Megan offers no evidence that Johnson inappropriately influenced Campbell's testimony. According to Megan, the most damning piece of evidence is Campbell's suggestion that Johnson was "trying to make a story," but this opinion criticizes Johnson's conduct *prior* to the arrest, in Johnson's first interview with Campbell, and there is no indication that Johnson *influenced* Campbell's later testimony at trial. Additionally, the mere fact that Campbell presented one of the two versions that he had previously related regarding Senior's story – that Megan and Junior, not the cousins, were present with Senior in the house when Burr was murdered – would not allow a reasonable jury to conclude that Johnson fabricated Campbell's testimony. There is thus no genuine issue of material fact supporting Johnson's fabrication of evidence.

### 3. Exclusion of Damages Expert

Winfrey's final claim is that the district court abused its discretion by *sua sponte* excluding her damages expert in violation of the Federal Rules of Evidence. Johnson asserts that because none of the orders from which Megan has appealed involved the expert, and since this case did not go to trial, the district court's statements were merely an "interlocutory statement of opinion." This court is inclined to agree. Megan's arguments are largely a

12

No. 18-20022

disagreement with the district court about how to apply federal evidentiary rules.   Moreover, the district court has wide discretion in such cases:   "with respect to expert testimony offered in the summary judgment context, the trial court has broad discretion to rule on the admissibility of the expert's evidence and its ruling must be sustained unless manifestly erroneous."   *Hathaway v. Bazany*, 507 F.3d 312, 317 (5th Cir. 2007) (citation and internal quotation marks omitted).   In any event, there is no formal order to review, and based on this opinion, any prognostication by this court on expert evidence that Megan may offer in the future is premature.

## CONCLUSION

The district court's judgment is **REVERSED** as to the Fourth Amendment claim, **AFFIRMED** as to the Fourteenth Amendment claims, and the case is **REMANDED** for further proceedings consistent herewith.